# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| **STEPHEN M. ZILKA,** | |
| Debtor. | **Bankruptcy No. 05-25205-MBM** |
| **Eric Bononi, Trustee of the** | |
| **Bankruptcy Estate of Stephen Zilka,** | |
| Movant, | **Chapter 7** |
| v. | |
| | **Related to Doc. No. 80** |
| **Bayer Employees Fed. Credit Union**, | |
| Respondent. | |

Appearances:    Thomas E. Reilly, for Bayer Employees Federal Credit Union.
John Lee Brown, Jr., for Stephen M. Zilka.
Eric Bononi, for Eric Bononi, the Trustee.

## **MEMORANDUM OPINION**

Eric Bononi, the Chapter 7 Trustee for Stephen M. Zilka, the instant debtor (hereafter "the Trustee"), moves to confirm the balances that are due on proofs of claim 1 – 4 that have been filed by Bayer Heritage Federal Credit Union (hereafter "Bayer"). Bayer joins in the foregoing motion of the Trustee (hereafter "the Trustee's Motion to Confirm Balances"), while Mr. Zilka (hereafter "the Debtor") opposes such motion.[1] If the Court grants the Trustee's Motion to

---

[1]The Court notes that the Debtor entitles his response to the Trustee's motion an objection to claim. However, the Debtor had previously objected to Bayer's claims, which objection to claim was dealt with by an Order of Court dated December 9, 2008 (Docket No. 74, entered 12/10/08). Because such court order did not finally dispose of Bayer's Claims 1 – 4, the Trustee's Motion to Confirm Balances can be viewed as essentially nothing more than a continuation of the Debtor's prior objection to claim. However, the Debtor's present response is nothing more than that; it is not a brand new objection to claim. Therefore, the

Confirm Balances, then Bayer's Claims 1 – 4 shall be allowed as unsecured claims, and shall share in a distribution from the Debtor's bankruptcy estate, in the following amounts: Claim 1 – $4,810.10; Claim 2 – $4,997.19; Claim 3 – $10,178.45; Claim 4 – $9,909.31.  For the reasons that are set forth below, and subsequent to a hearing on the matter that was held on March 3, 2009, the Court shall grant the Trustee's Motion to Confirm Balances.  Therefore, Bayer's Claims 1 – 4 shall be allowed, and shall share in a distribution from the Debtor's bankruptcy estate, in the amounts set forth above.

## STATEMENT OF FACTS

The Debtor commenced the instant bankruptcy case on April 25, 2005.  During the course of such bankruptcy case, a personal injury claim of the Debtor was settled for an amount sufficient to pay all unsecured claims of the Debtor's bankruptcy estate.  Among such unsecured claims are Bayer's Claims 1 – 4, which claims the Trustee (and Bayer as well) seeks to have allowed, and then paid by the Debtor's bankruptcy estate, in the amounts set forth above.  Each of Bayer's four claims was incurred by virtue of money that Bayer lent to the Debtor (or lent to the Debtor's ex-spouse, for which loans the Debtor indisputably was jointly liable thereon).

The Debtor opposes the Trustee's Motion to Confirm Balances, contending that each of such claims of Bayer should be disallowed on the ground that each such claim was fully discharged outside of bankruptcy.  The basis for

---

Debtor's response need not be dealt with separately, and there is no need for a separate hearing to be held on the same.

the Debtor's position that each of Bayer's four claims was fully discharged outside of bankruptcy is that, with respect to each of Bayer's four claims, Bayer issued to the Debtor (a) an account statement – apparently nothing more than a typical quarterly account statement – indicating that the outstanding loan balance was $0.00 because such loan had been charged off (hereafter "the Account Statements"), and (b) an Internal Revenue Service (IRS) Form 1099-C, "Cancellation of Debt" (hereafter "Form(s) 1099-C").

The Account Statements are attached as exhibits to several documents that have been filed with the Court by each of the parties. The Account Statements reveal that Bayer charged off (a) the outstanding balances on the loans that constitute Bayer's Claims 1 and 3 on April 29, 2005, or just four days subsequent to when the instant bankruptcy case was commenced, and (b) the outstanding balances on the loans that constitute Bayer's Claims 2 and 4 on October 29, 2004, or almost six months prior to when the instant bankruptcy case was commenced.

The parties agree that Forms 1099-C were issued by Bayer to the Debtor for Bayer's Claims 1 and 3 on April 29, 2005 (i.e., four days subsequent to when the instant bankruptcy case was commenced). Bayer says nothing regarding when the Forms 1099-C were issued regarding its Claims 2 and 4, while the Debtor contends that it received such forms at some point pre-petition.

## DISCUSSION

As an initial matter, the Court holds, as a matter of law, that when a lender issues an account statement to its borrower indicating that an outstanding loan

3

Case 05-25205-MBM    Doc 89    Filed 07/16/09    Entered 07/16/09 15:47:52    Desc Main
Document    Page 4 of 18

balance equals $0.00 because such loan has been charged off, such "is not the legal equivalent of forgiving [– i.e., discharging liability on –] a debt." <u>Discover Bank v. Worsham</u>, 176 P.3d 366, 368 (Okla.Civ.App. 2007) ("notation on Cardholder's August 30, 2002 statement which reads: 'Internal charge off' of $8,823.48 resulting in a zero balance ... [only] reflects Discover's accounting procedure for removing the account from active status"); <u>Unifund CCR Partners v. Urban</u>, 2005 WL 3624541 at 1 (Conn.Super.Ct. 2005) (same); <u>Mitchell Bank v. Schanke</u>, 676 N.W.2d 849, 854 n.7 (Wis. 2004) ("A 'write off' does not mean that the institution has forgiven the debt or that the debt is not still owing"); <u>Central Home Trust Co. of Elizabeth v. Lippincott</u>, 392 So.2d 931, 933 (Fla.Dist.Ct.App. 1980) (same). Applying the foregoing statement of the law to the instant matter, the Court must quickly reject the Debtor's position that (a) Bayer discharged the Debtor from liability on each of Bayer's four claims simply by virtue of Bayer's issuance of the Account Statements, and/or (b) Bayer's issuance of the Account Statements proves the occurrence of such a discharge. Having so ruled, the Debtor is left with but one remaining argument, namely that Bayer's four claims were fully discharged outside of bankruptcy because of, or as evidenced by, Bayer's issuance to the Debtor of the Forms 1099-C.

26 U.S.C. § 6050P(a) provides, in pertinent part, that "[a]ny applicable entity which discharges ... the indebtedness of any person during any calendar year shall make a return ... setting forth ... the name, address, and TIN of each person whose indebtedness was discharged ...[, as well as] the date of the discharge and the amount of the indebtedness discharged."  26 U.S.C.

§ 6050P(a)(1)-(2) (West 2007).  The information return just referred to shall be a Form 1099-C, which return must be filed with the Internal Revenue Service.  *See* 26 C.F.R. § 1.6050P-1(a)(1) (West 2009).  Every applicable entity which makes such a return must also "furnish to each person whose name is required to be set forth in such return a written statement showing ... the name and address of the [applicable] entity ..., and ... the information required to be shown on the return with respect to such person."  26 U.S.C. § 6050P(d)(1)-(2) (West 2007).  The written statement just referred to can be copy B of the Form 1099-C.  *See* 26 C.F.R. § 1.6050P-1(f)(2) (West 2009).  26 C.F.R. § 1.6050P-1(a)(1) also provides that:

> Solely for purposes of the reporting requirements of section 6050P and this section, a discharge of indebtedness is deemed to have occurred ... if and only if there has occurred an identifiable event described in paragraph (b)(2) of this section, whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred.

26 C.F.R. § 1.6050P-1(a)(1).  26 C.F.R. § 1.6050P-1(b)(2) sets forth eight identifiable events that can trigger the filing and issuance of a Form 1099-C, among which are "(A) [a] discharge of indebtedness under title 11 of the United States Code (bankruptcy)," and "(G) [a] discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt."  26 C.F.R. § 1.6050P-1(b)(2)(i) (West 2009).

5

The Debtor contends that the identifiable event that triggered Bayer's issuance of each of the four Forms 1099-C to him must have been the latter of the two just listed above – i.e., a discharge of indebtedness of each of Bayer's four claims pursuant to a decision by Bayer, or the application of a defined policy of Bayer, to discontinue collection activity and discharge such claims. The Debtor contends as much because he maintains that none of the remaining seven identifiable events listed in 26 C.F.R. § 1.6050P-1(b)(2)(i) could have possibly triggered Bayer's issuance of any of the four Forms 1099-C.

Bayer contends that it issued Forms 1099-C regarding its Claims 1 and 3 in response to the Debtor's commencement of the instant bankruptcy case; Bayer says nothing regarding why it issued similar forms regarding its Claims 2 and 4. The Debtor maintains that Bayer did not issue Forms 1099-C regarding its Claims 1 and 3 in response to the Debtor's commencement of the instant bankruptcy case because (a) such forms were issued on April 29, 2005, which date was just four days after the instant case was commenced, and by which date, according to the Debtor, it was very unlikely that Bayer had even received notice of such commencement, and (b) the commencement of a bankruptcy case does not even constitute one of the eight triggering events listed in 26 C.F.R. § 1.6050P-1(b)(2)(i). The Debtor is correct that a bankruptcy discharge, rather than the mere commencement of a bankruptcy case, constitutes one of the aforementioned triggering events; such observation, of course, does not preclude the possibility, as Bayer, in fact, argues, that it mistakenly issued the Forms 1099-C regarding Claims 1 and 3 in response to the Debtor's commencement of

6

the instant bankruptcy case. In any event, the Court will give the Debtor the benefit of its position that the true reason for Bayer's issuance of the Forms 1099-C regarding Claims 1 and 3 was not in response to the Debtor's commencement of the instant bankruptcy case.

As the Court understands it, the Debtor makes two discrete arguments as to why Bayer's issuance to the Debtor of the four Forms 1099-C operated to fully discharge each of Bayer's four claims to which such Forms 1099-C pertain. First, the Court understands the Debtor to argue that, because the event that triggered the issuance of each of the Forms 1099-C must have been a discharge of indebtedness of each of Bayer's four claims pursuant to a decision by Bayer, or the application of a defined policy of Bayer, to discontinue collection activity and discharge such claims, Bayer's issuance of such Forms 1099-C essentially constitutes an admission by Bayer that it – and thus proves that Bayer – discharged the Debtor from further liability on each of Bayer's four claims. Second, the Court understands the Debtor to argue that Bayer's issuance of the Forms 1099-C itself operated to legally discharge the Debtor from further liability on each of Bayer's four claims. For several reasons set forth below, the Court must reject both of the Debtor's foregoing arguments.

First, "[t]he Internal Revenue Service[, which regulatory agency is the one that promulgated 26 C.F.R. § 1.6050P-1, and whose interpretation of the same is thus entitled to great deference, see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-845, 104 S.Ct. 2778, 2782-2783, 81 L.Ed.2d 694 (U.S. 1984),] does not view a Form 1099-C as an admission by the

7

creditor that it has discharged the debt and can no longer pursue collection [thereon]." I.R.S. Info. Ltr. 2005-0207, 2005 WL 3561135 (Dec. 30, 2005) (next-to-last paragraph, construing 26 C.F.R. § 1.6050P-1(a)); *see also* I.R.S. Info. Ltr. 2005-0208, 2005 WL 3561136 (Dec. 30, 2005) (Q & A #5, 26 U.S.C. "Section 6050P and the regulations do not prohibit collection activity after a creditor reports by filing a Form 1099-C"); Sims v. Commissioner, T.C. Summ.Op. 2002-76, 2002 WL 1825373 at 2 (T.C. 2002) (evidence that Form 1099-C was issued does not establish that petitioner's debt was ever discharged); Debt Buyers' Association v. Snow, 481 F.Supp.2d 1, 13-14 (D.D.C. 2006) (the status of a debt described on a Form 1099-C is not falsely represented if, when providing such Form 1099-C to a debtor, a creditor attaches thereto a notice that such creditor plans to continue debt collection activities with respect to such described debt). Therefore, regardless of the reason why Bayer issued the four Forms 1099-C, Bayer's issuance of such forms constitutes neither an admission by Bayer that it, nor consequently demonstrates that Bayer, discharged the Debtor from further liability on any of Bayer's four claims.

Second, that a Form 1099-C does not constitute an admission by the creditor that it has discharged the debt and can no longer pursue collection thereon is consistent with the fact that Forms 1099-C are sometimes filed and issued in error, ultimately prompting the filing and issuance of corrected Forms 1099-C. In the instant matter, Bayer obviously filed and issued the four Forms 1099-C regarding the Debtor in response to its charging off of the outstanding indebtedness of the four loans to the Debtor that constitute Bayer's Claims 1 – 4;

such is evidenced by the fact that the date of such charge off, as set forth in the Account Statements, coincides with the date that the Forms 1099-C were issued. Such charge off of indebtedness, however, and as set forth above, neither is the legal equivalent of, nor constitutes, the discharge of such indebtedness; therefore, Bayer filed and issued the four Forms 1099-C regarding the Debtor in error, which error can be corrected by the filing and issuance of corrected Forms 1099-C. That Forms 1099-C can be corrected would be impossible were it the case that the filing and issuance of a Form 1099-C constitutes an admission by the creditor that it has discharged the debt and can no longer pursue collection thereon. Thus, Bayer's issuance of the Forms 1099-C does not serve to demonstrate that Bayer discharged the Debtor from further liability on any of Bayer's four claims.

Third, Bayer's issuance of the Forms 1099-C did not itself operate to legally discharge the Debtor from further liability on each of Bayer's four claims. That is because Forms 1099-C, as a matter of law, do not themselves operate to legally discharge debtors from liability on those claims that are described in such Forms 1099-C. *See* Owens v. Commissioner, 67 F.App'x 253, 2003 WL 21196200 at 3 (5th Cir. 2003) (issuance and filing of Form 1099-C does not constitute actual cancellation of the loan); Leonard v. Old National Bank Corp., 837 N.E.2d 543, 545-546 (Ind.Ct.App. 2005) (filing a Form 1099-C is merely an informational filing with the I.R.S., done to report an event that has already happened, and thus does not operate to cancel debt itself); Sims, T.C. Summ.Op. 2002-76, 2002 WL 1825373 at 2 (Form 1099-C does not establish

that petitioner's debt was ever discharged, which necessarily means that such form did not operate to cancel such debt); Debt Buyers' Association, 481 F.Supp.2d at 13-14 (a creditor can attach to a Form 1099-C a notice that such creditor plans to continue debt collection activities with respect to a debt described in such Form 1099-C, which necessarily means that such form did not operate to cancel such debt).

Fourth, that a Form 1099-C does not itself operate to legally discharge a debtor from liability on the claim(s) that are described in such Form 1099-C is also compelled by an application to such form of 13 Pa.C.S.A. § 3604(a),[2] Pennsylvania's Uniform Commercial Code provision regarding the methods of discharging an instrument such as, for instance, a promissory note (like those given by the Debtor, or for which the Debtor is liable thereon). The Court so holds because (a) the sole purpose behind filing and issuing a Form 1099-C is to satisfy an I.R.S. information reporting requirement regarding an event that has

---

[2]13 Pa.C.S.A. § 3604(a) provides as follows:

(a) Methods of discharge. – A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument:

>  (1) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation or cancellation of the instrument, cancellation or striking out of the party's signature or the addition of words to the instrument indicating discharge; or

>  (2) by agreeing not to sue or otherwise renouncing rights against the party by a signed writing.

13 Pa.C.S.A. § 3604(a) (Purdon's 2009).

10

already happened, *see* Leonard, 837 N.E.2d at 545-546, (b) such sole purpose is a far cry from a purpose of discharging the obligation that is the subject of the Form 1099-C, which purpose/intent must accompany any voluntary act that would operate to discharge such obligation under 13 Pa.C.S.A. § 3604(a)(1), *see* 2 James J. White & Robert S. Summers, Uniform Commercial Code § 16-13 at 147 (5th ed. 2008) ("Section 3-604 makes it clear that surrender of an instrument[, for instance,] acts as a discharge only if the instrument is surrendered *with the intention of discharging it*"), and (c) a Form 1099-C, as just set forth, only serves to report (strictly for tax purposes) information regarding an event that has already happened, which reporting of information cannot possibly be stretched or strained to also constitute a present contractual agreement not to sue, or a present contractual renunciation of rights against, a debtor, as is called for under 13 Pa.C.S.A. § 3604(a)(2).[3]

Fifth, the Court is aware of several cases that hold that, if a creditor issues a Form 1099-C to a debtor who then relies on the same and pays income tax as

---

[3] A Connecticut state court held in Franklin Credit Management Corp. v. Nicholas, 812 A.2d 51 (Conn.App.Ct. 2002), that a Form 1099-C could constitute a signed writing under Connecticut's version of Uniform Commercial Code § 3-604(a)(2). *See* Id. at 60-62. However, the Franklin Credit court was not faced with the issue of whether, and thus did not rule that, a Form 1099-C can also constitute a present agreement not to sue, or a present renunciation of rights against, a debtor, within the meaning of Uniform Commercial Code § 3-604(a)(2). Nevertheless, out of an abundance of caution, and for the reasons set forth in the text herein immediately preceding the instant footnote, this Court declares that it respectfully disagrees with the Franklin Credit court if, and to the extent that, the Franklin Credit court held that a Form 1099-C can constitute a present agreement not to sue, or a present renunciation of rights against, a debtor, within the meaning of Uniform Commercial Code § 3-604(a)(2).

a result thereof (income tax on income due to discharge of indebtedness), then such creditor cannot enforce the debt described in such Form 1099-C unless such creditor issues a corrected Form 1099-C reporting that no discharge of debt actually occurred.  See In re Crosby, 261 B.R. 470, 474-475 & 477 (Bankr.D.Kan. 2001); Franklin Credit, 812 A.2d at 62-63.  These courts seem to justify their decisions on the basis that, because the debtor has been prejudiced by the issuance of the original Form 1099-C, it would be inequitable to permit enforcement of the debt in question until the debtor obtains corresponding income tax relief by way of the receipt of a corrected Form 1099-C.  See Crosby, 261 B.R. at 474-475 & 477; Franklin Credit, 812 A.2d at 62-63.  In the instant matter, the Court deals with such "tax relief" issue simply enough; the Court will, as part of its accompanying order, and as an exercise of its discretion, direct that Bayer forthwith file with the I.R.S. and issue to the Debtor four corrected Forms 1099-C that pertain to each of its four respective claims that are to be allowed herein.[4]  By virtue of Bayer's issuance of corrected Forms 1099-C, the Debtor will have the requisite documentation that he needs to obtain the income tax relief [5]

---

[4]The corrected Forms 1099-C to be filed and issued by Bayer shall report that no discharge of debt occurred with respect to any of Bayer's four claims. Thus, such Forms 1099-C should reveal a discharge of debt relative to each of Bayer's four claims equal to $0.00.

[5]The Debtor maintains that he has been prejudiced by Bayer's issuance of the four Forms 1099-C because, as a result of having received such forms, the Debtor alleges that he then paid income tax on the income from corresponding discharge of indebtedness.  The Court is uncertain, however, whether the Debtor was so prejudiced – or, for that matter, was prejudiced in any way – because (a) the Court is only aware that the Debtor reported such taxable income, in the tax year 2004, with respect to Bayer's Claim 4 in the amount of $9,909, see Debtor's

that so concerned the courts in Crosby and Franklin Credit.[6] The Court is aware that the Debtor also advances another argument as to why it would be inequitable to allow Bayer to enforce its four claims, namely that Bayer has already benefitted by the income tax deductions that it would have taken as a result of discharging the debts that constitute its four claims. Such argument is unavailing, however, because (a) Bayer, as set forth above, did not, by charging off the debts that constitute its four claims, discharge (i.e., forgive) such debts, which means that Bayer also did not necessarily take any tax deductions with respect to such claims, and (b) even if, and to the extent that, Bayer has taken such prior income tax deductions, the same would then automatically be reversed if, and when, Bayer receives any recovery from the Debtor's bankruptcy estate regarding its four claims (i.e., Bayer's recovery by way of continued collection efforts) – such would be the case because, upon receipt of such recovery, the same would constitute fully taxable income to Bayer.

Finally, but yet significantly, the Court holds that, even if, for whatever

---

2004 Federal Income Tax Return, line 21 (which return is attached to the Debtor's bankruptcy schedules), (b) the entirety of the Debtor's 2004 federal income tax due is listed on the Debtor's Bankruptcy Schedule E as an outstanding debt as of April 25, 2005 (when the instant case was commenced), and (c) the Court is thus unaware that the Debtor has ever actually paid any income tax as a result of his receipt of the Forms 1099-C. In any event, the income tax relief afforded by the issuance of corrected Forms 1099-C will operate to undo any prejudicial income tax consequences that the Debtor might have suffered as a result of his receipt of the Forms 1099-C.

[6]If, and to the extent that, this Court's resolution of the "tax relief" issue is irreconcilable with the decisions in Crosby and Franklin Credit, this Court respectfully disagrees with those decisions.

reason, the Debtor were correct that the Account Statements and/or the Forms 1099-C operated to legally discharge the Debtor, or evidenced that the Debtor had been discharged, from liability on the debts described therein (i.e., Bayer's four claims), such would not be helpful with respect to the Debtor's opposition to either the allowance of Bayer's Claims 1 and 3 or the payment of such claims by the Debtor's bankruptcy estate. That is because the dates of the Forms 1099-C regarding, and the dates upon which occurred the chargeoffs of, Bayer's Claims 1 and 3 are April 29, 2005, which date is four days subsequent to when the instant bankruptcy case was commenced. The significance of such chronology, for several reasons, is substantial. First, with respect to the allowance of Bayer's Claims 1 and 3, such claims must be allowed pursuant to 11 U.S.C. § 502(b)(1), as a matter of law, if such claims were enforceable against the Debtor and the Debtor's property pre-petition, that is prior to April 25, 2005, when the instant bankruptcy case was commenced. *See* In re Strangis, 67 B.R. 243, 246 (Bankr.D.Minn. 1986) ("Proper focus of the language regarding disallowance of a claim [under § 502(b)(1)], is on *prepetition* enforceability, not post-petition enforceability"). Applying the foregoing statement of the law to Bayer's Claims 1 and 3, such claims must be allowed in full because the Debtor does not contend that they were unenforceable on or prior to April 25, 2005; instead, the Debtor merely contends that they became unenforceable four days later on April 29, 2005.[7] Second, with respect to the payment of Bayer's Claims 1 and 3 by the

---

[7]Post-petition extinguishment of a debt, for whatever reason, can certainly provide a reason for objection to the payment of such debt by a debtor's

14

Debtor's bankruptcy estate, such claims must be paid by such bankruptcy estate, as a matter of law, unless they have been satisfied by someone else. *See* Id. at 245-246 ("it must be shown that the creditor was made whole by the settl[ement] ... to sustain an objection to payment of the filed claim by the [debtor's bankruptcy] estate, based on satisfaction"). The foregoing is true because (a) the Debtor's "bankruptcy estate is an entity wholly separate from the [D]ebtor, and estate property[, as of the bankruptcy petition filing date,] is not the [D]ebtor's property," Id. at 246, (b) Bayer's Claims 1 and 3, which as just set forth are allowed in full, must be allowed as of the Debtor's bankruptcy petition filing date, that is April 25, 2005, *see* 11 U.S.C. § 502(b) (West 2009) (bankruptcy court shall determine claim "as of the date of the filing of the petition"), (c) Bayer consequently possesses – in addition to its claims against the Debtor personally – claims directly against the Debtor's bankruptcy estate (and against property of such estate) as of April 25, 2005, in the form of Bayer's Claims 1 and 3, and (d) even if the Debtor was discharged from personal liability with respect to Bayer's Claims 1 and 3 on April 29, 2005, such discharge did not also operate to discharge the Debtor's bankruptcy estate from liability on such claims. Applying the foregoing statement of the law to Bayer's Claims 1 and 3, such claims must be paid in full by the Debtor's bankruptcy estate because they have not been satisfied, even in part, by anyone, including the Debtor; because they have not

---

bankruptcy estate. *See* Strangis, 67 B.R. at 246 n.1. "However, denial of payment, based on ... [such extinguishment], of a properly filed claim is different from its disallowance; and, the language of § 502(b)(1) addresses the latter, not the former." Id.

15

been so satisfied, such claims remain due and owing from the Debtor's bankruptcy estate.

## **CONCLUSION**

For all of the foregoing reasons, the Court shall grant the Trustee's Motion to Confirm Balances. Therefore, Bayer's Claims 1 – 4 shall be allowed, and shall share in a distribution from – that is, they shall be paid by – the Debtor's bankruptcy estate, in the following amounts: Claim 1 – $4,810.10; Claim 2 – $4,997.19; Claim 3 – $10,178.45; Claim 4 – $9,909.31. Additionally, Bayer shall forthwith file with the I.R.S. and issue to the Debtor four corrected Forms 1099-C that pertain to each of its four respective claims that are to be allowed herein.

**BY THE COURT**

 /s/
**M. BRUCE McCULLOUGH,
U.S. Bankruptcy Judge**

**DATED:     July 16, 2009**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE:** | : |
| | : |
| **STEPHEN M. ZILKA,** | : |
| Debtor. | : **Bankruptcy No. 05-25205-MBM** |
| | : |
| **Eric Bononi, Trustee of the** | : |
| **Bankruptcy Estate of Stephen Zilka,** | : |
| Movant, | : **Chapter 7** |
| | : |
| v. | : |
| | : **Related to Doc. No. 80** |
| **Bayer Employees Fed. Credit Union**, | : |
| Respondent. | : |

## ORDER OF COURT

**AND NOW,** this **16th day** of **July, 2009**, for the reasons set forth in the accompanying Memorandum Opinion of the same date; and subsequent to notice and a hearing on the matter that was held on March 3, 2009, it is **hereby ORDERED, ADJUDGED, AND DECREED** that:

(a) the motion of Eric Bononi, the Chapter 7 Trustee for Stephen M. Zilka, the instant debtor (hereafter "the Debtor"), to confirm the balances that are due on proofs of claim 1 – 4 (hereafter "Claims 1 – 4") that have been filed by Bayer Heritage Federal Credit Union (hereafter "Bayer") is **GRANTED**;

(b) Bayer's Claims 1 – 4 are **ALLOWED** in the following amounts: Claim 1 – $4,810.10; Claim 2 – $4,997.19; Claim 3 – $10,178.45; Claim 4 – $9,909.31;

(c) Bayer's Claims 1 – 4 are to share in a distribution from – that is, they are to be paid by – the Debtor's bankruptcy estate; and

(d)  Bayer shall forthwith file with the I.R.S. and issue to the Debtor four corrected Forms 1099-C that pertain to each of its four respective claims that are allowed herein.

**BY THE COURT**

_/s/_
**M. BRUCE McCULLOUGH,
U.S. Bankruptcy Judge**

copies to:

John Lee Brown, Jr., Esq.
2675 Brodhead Road
Aliquippa, PA 15001

Eric E. Bononi, Esq.
20 North Pennsylvania Ave.
Greensburg, PA 15601

Thomas E. Reilly, Esq.
2025 Greentree Road
Pittsburgh, PA 15220-1447